UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES S. SIMMONS, | |
| Plaintiff, | |
| v. | Civil Action No. 18-cv-10136-ADB |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR MORGAN STANLEY ABS CAPITAL I INC. TRUST 2004-HE8, | |
| Defendant. | |

## **MEMORANDUM AND ORDER ON MOTION TO DISMISS AND REQUEST FOR A PRELIMINARY INJUNCTION**

BURROUGHS, D.J.

Defendant scheduled a foreclosure sale of Plaintiff's home for January 19, 2018, but the sale was postponed upon the filing of this lawsuit in which Plaintiff asserts that Defendant does not hold the mortgage and has failed to comply with certain conditions precedent to foreclosure. Currently pending before the Court is Defendant's motion to dismiss the complaint for failure to state a claim [ECF No. 13] and Plaintiff's request for a preliminary injunction [ECF No. 1-1]. The Court previously granted Plaintiff's request for a temporary restraining order ("TRO"), enjoining Defendant from foreclosing on the property until 5:01 P.M. on March 2, 2018, in order to hold a hearing on the request for a preliminary injunction and an extension of the TRO. [ECF No. 22]. At the hearing held on March 1, 2018, the parties agreed to extend the TRO until 5:01 P.M. on April 25, 2018. [ECF No. 22]. For the reasons stated herein, the motion to dismiss is GRANTED and the request for a preliminary injunction is DENIED. Accordingly, the TRO will not be further extended.

## I. BACKGROUND

The following facts are drawn from the complaint, the well-pleaded allegations of which are taken as true for purposes of evaluating Defendant's motion to dismiss. See Ruivo v. Wells Fargo Bank, 766 F.3d 87, 90 (1st Cir. 2014). Certain details are also culled from documents whose authenticity are not disputed by the parties, official public records, and documents sufficiently referred to in the complaint, or attached thereto. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008).

On June 4, 2004, Plaintiff executed a promissory note in the amount of $119,700 in exchange for a mortgage on his home from Aames Funding Corporation d/b/a Aames Home Loan ("Aames"). [ECF No. 1-1 at ¶¶ 1, 3] ("Complaint"). Plaintiff has not made any payments on the mortgage since at least September 1, 2008. Id. ¶ 4. According to the information on file with the Hampden County Registry of Deeds ("Registry"), on March 2, 2016, Accredited Home Lenders, Inc., as successor by merger to Aames (hereinafter, "Aames/Accredited"), assigned Plaintiff's mortgage to Bank of America, N.A., and, on March 25, 2016, Bank of America, N.A. assigned the mortgage to Defendant. [ECF Nos. 14-6, 14-7].

On January 8, 2016, Plaintiff received a notice titled "150 Day Right to Cure Your Mortgage Default," which identified Defendant as the mortgagee and Select Portfolio Servicing, Inc. as the mortgage servicer. Compl. ¶ 4; [ECF No. 15 at 15−16]. Plaintiff later received from Defendant a notice of a foreclosure sale dated December 13, 2017, stating that a public auction on his property was scheduled for January 19, 2018. Compl. ¶ 5; [ECF No. 15 at 19−20]. The sale notice included a copy of the promissory note and a certification identifying the chain of mortgage assignments that were recorded with the Registry. Compl. ¶ 6; [ECF No. 15 at 21−27].

After counsel for Plaintiff was unable to negotiate a resolution or postponement of the auction, on January 16, 2018, Plaintiff filed in the Hampden County Superior Court a motion for an *ex parte* TRO and a Complaint in which he requested a preliminary injunction, a permanent injunction, and a declaration that the mortgage and note are unenforceable. [ECF No. 15 at 6]. The Superior Court temporarily enjoined Defendant from proceeding with the foreclosure sale and scheduled a hearing on the TRO motion for January 25, 2018. Id. On January 24, 2018, Defendant removed the case to federal court. [ECF No. 1]. Thereafter, a hearing on the TRO motion was scheduled for February 14, 2018 before Judge Mark G. Mastroianni of the United States District Court for the District of Massachusetts, after Defendant indicated that the foreclosure sale had been rescheduled for February 21, 2018. [ECF Nos. 10, 11]. On February 13, 2018, Plaintiff filed his memorandum of law in support of the TRO motion. [ECF No. 16]. Both parties were represented at the hearing held on February 14, 2018 [ECF No. 20], during which Judge Mastroianni entered an order of recusal. [ECF No. 17]. The case was ultimately assigned to this Court. [ECF No. 19].

On February 15, 2018, this Court entered a TRO enjoining Defendant from conducting a foreclosure sale of Plaintiff's home, which remained in effect until 5:01 PM on March 2, 2018, so that the Court could conduct a hearing on the request for a preliminary injunction and the extension of the TRO on March 1, 2018. [ECF No. 22]. Consequently, the foreclosure sale was rescheduled for March 6, 2018. [ECF No. 23]. On March 1, 2018, both parties appeared through counsel at the hearing, and by the agreement of the parties, the TRO entered on February 15, 2018 [ECF No. 22] was extended until 5:01 PM on April 25, 2018. Id. Plaintiff filed his opposition to the pending motion to dismiss on March 14, 2018. [ECF No. 25].

## II. MOTION TO DISMISS

Plaintiff asks the Court to enjoin the foreclosure and declare the mortgage and note void and unenforceable based on the following: (1) that Defendant lacks the authority to foreclose due to alleged defects in the chain of title of the mortgage and note; and (2) that the 150-day cure notice incorrectly stated the amount required to cure the default. Plaintiff does not otherwise argue that Defendant failed to comply with the terms of the mortgage or other statutory conditions precedent to foreclosure.

### A. Legal Standard

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all well-pleaded facts in the complaint and analyzes those facts "in the light most hospitable to the plaintiff's theory, and draw[s] all reasonable inferences for the plaintiff." United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). Although detailed factual allegations are not required, the complaint must set forth "more than labels and conclusions" to survive a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Furthermore, courts are not bound to accept as true legal conclusions couched as factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The facts alleged, when taken together, must therefore be sufficient to "state a claim to relief that is plausible on its face," A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Twombly, 550 U.S. at 570), and must "raise a right to relief above the speculative level," Twombly, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action" is not enough. Id. Dismissal for failure to state a claim is thus appropriate "[i]f the complaint does not set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Lemelson v. U.S.

Bank Nat'l Ass'n, 721 F.3d 18, 21 (1st Cir. 2013) (quoting Hutcheson, 647 F.3d at 384) (further internal quotations omitted).

When evaluating the sufficiency of a complaint, the Court first "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." A.G. ex rel. Maddox, 732 F.3d at 80 (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, the Court must determine whether the remaining factual content allows a "reasonable inference that the defendant is liable for the misconduct alleged." Id. "Although evaluating the plausibility of a legal claim requires the reviewing court to draw on its judicial experience and common sense, the court may not disregard properly pled factual allegations, even if it strikes a savvy judge that actual proof of those facts is improbable." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (internal quotations and citation omitted).

### B. Chain of Title

Plaintiff contends that a missing link in the chain of title—an unrecorded assignment of the mortgage to Countrywide—voided the assignment of the mortgage to Defendant. Under Massachusetts law, a mortgagee who seeks to foreclose under Massachusetts General Laws Chapter 244, Section 14 "must hold both the mortgage and the underlying note at the time that the putative foreclosing entity provides statutory notice of foreclosure." Matt v. HSBC Bank, 968 F. Supp. 2d 351, 357 (D. Mass. 2013) (citing Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118, 1124–31 (Mass. 2012)). To establish itself as the mortgage holder, "a foreclosing entity may provide a complete chain of assignments linking it to the record holder of the mortgage, or a single assignment from the record holder of the mortgage." Orellana v. Deutsche Bank Nat'l Trust Co., No. 12-cv-11982-NMG, 2013 WL 5348596, at *7 (D. Mass. Aug. 30, 2013) (citing

U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 53 (Mass. 2011)); see Sullivan v. Kondaur Capital Corp., 7 N.E.3d 1113, 1119 (Mass. App. Ct. 2014) ("[A] foreclosing mortgagee must demonstrate an unbroken chain of assignments in order to foreclose a mortgage." (citing Ibanez, 941 N.E.2d at 53)); Ibanez, 941 N.E.2d at 53 ("If the [foreclosing entity] acquired the note and mortgage from the original lender or from another party who acquired it from the original lender, the [foreclosing entity] can meet its burden through evidence that traces the loan from the original lender to the [foreclosing entity]." (citing In re Parrish, 326 B.R. 708, 720 (Bankr. N.D. Ohio 2005))). The requirements for a valid mortgage assignment are the following:

> [an] assignment of mortgage . . . executed before a notary public . . . by a person purporting to hold the position of president [or] vice president, . . . including assistant to any such office or position, of the entity holding such mortgage, or otherwise purporting to be an authorized signatory for such entity, . . . shall be binding upon such entity and shall be entitled to be recorded . . . .

M.G.L. c. 183, § 54B.

Here, Defendant has provided a complete chain of assignment—from the original mortgagee (or its successor by merger) to Bank of America, N.A., and from Bank of America, N.A. to Defendant—and each assignment was executed by an Assistant Vice President before a notary public and publicly recorded in the Registry. Because the assignments satisfied Section 54B, absent Plaintiff "[coming] forward with anything . . . that calls the [the assignments'] validity into question under Massachusetts law," they are "binding" upon Aames/Accredited and Bank of America, N.A., respectively, and "[a]n assignment binding on the assignor is not, by definition, void." Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1, 13 (1st Cir. 2014) (citing Culhane v. Aurora Loan Servs. of Nebraska, 708 F.3d 282, 294 (1st Cir. 2013)); see Zullo v. HMC Assets, LLC, 88 Mass. App. Ct. 1118, 2015 WL 9488393, at *3 (Mass. App. Ct. 2015) ("Although [Plaintiff] has standing to claim that the two mortgage assignments are void, he has

no basis on this record for doing so here, where both assignors complied with [M.G.L c. 183, § 54B], and where [defendant] has otherwise demonstrated a simple chain of title that well established its record ownership of the mortgage."); Matt, 968 F. Supp. 2d at 358 (assignment of mortgage from original mortgagee to New Century, and second assignment from New Century to defendant "suffice to establish that [defendant] was validly assigned the mortgage").

As an initial matter, contrary to Defendant's contention, Plaintiff's claim does not fail for lack of standing, as he can contest the validity of the assignment on the ground that "the assignor had nothing to assign or had no authority make an assignment to a particular assignee." Culhane, 708 F.3d at 291. For instance, in Koufos v. U.S. Bank, N.A., 939 F. Supp. 2d 40, 45 (D. Mass. 2013), the plaintiff plausibly alleged that prior to purportedly assigning plaintiff's mortgage to the defendant, the assignor had sold plaintiff's mortgage, along with substantially all of its other mortgage assets, as part of a Chapter 11 bankruptcy. Plaintiff argued that the assignor had "completely divested itself of the [mortgage]" prior to assigning the mortgage to the defendant, and the court acknowledged that "[i]f [p]laintiff is correct, [the assignor] purported . . . to assign to [defendant] something that [the assignor] no longer owned and could not assign. In that case, the purported assignment was invalid; any foreclosure proceeding grounded on rights obtained under the invalid assignment would be void." Id. at 47.

Here, Plaintiff's lone allegation in support of voiding the assignment to Defendant is that "[a] review of the records of the [Registry] shows that there is no assignment of the mortgage on record to [Countrywide] (an intervening owner of the mortgage) or to [Defendant]." Compl. ¶ 7. Plaintiff submitted documents that he received between September and December 2006 from Countrywide, including a monthly home loan statement, a notice of receipt of an installment

payment, and a confirmation that Plaintiff negotiated a repayment plan.[1] [ECF No. 16 at 8−13]. These documents suggest that Countrywide may have serviced the mortgage for a period of time, but do not state or otherwise imply that Countrywide held the mortgage. Unlike in Koufos, where the plaintiff's allegations plausibly identified the transaction that divested the assignor of an interest, Plaintiff provides no other information from which the Court can infer that Defendant was not validly assigned the mortgage from Bank of America, N.A. The Complaint contains no allegations as to when or for how long Countrywide purportedly owned the mortgage, what legal or equitable interest it held, the validity of the alleged unrecorded assignment, whether Countrywide later assigned the mortgage (including back to Aames/Accredited), or whether Countrywide currently holds the mortgage. Particularly in light of the complete chain of recorded assignments put forth by Defendant, the Complaint at best invites the Court to speculate as to whether Plaintiff's allegation, even if accepted as true, breaks the chain of title. See Holland v. Select Portfolio Servicing, Inc., No. 17-cv-11212-JGD, 2018 WL 1320321, at *5 (D. Mass. Mar. 14, 2018) (based on the assignments of record, dismissing plaintiff's claim that last assignment in chain was invalid because assignor had allegedly divested its ownership interest before making the assignment); cf. Bank of New York Mellon Corp. v. Wain, 11 N.E.3d 633, 639 (Mass. App. Ct. 2014) (rejecting plaintiff's attempt to void assignment by arguing that, based on notice to cure letter which predated the assignment, the assignor had already assigned the

---

[1] The district court "has broad discretion in deciding what evidence to consider in connection with a motion for preliminary injunction." Rice v. Wells Fargo Bank, N.A., 2. F. Supp. 3d 25, 31 (D. Mass. 2014) (citing Asseo v. Pan Am. Grain Co., 805 F.2d 23, 26 (1st Cir. 1986)). Here, the Court considered the documents submitted outside of the pleadings by Plaintiff, but they did not have a material impact on the disposition of the requests for injunctive relief.
Plaintiff also relies on this evidence in opposing the motion to dismiss while arguing that Defendant cannot respond that the evidence is insufficient. Plaintiff cannot have it both ways. Ultimately, however, Plaintiff's claims are not plausible even when evaluated in context with his submissions from outside of the pleadings.

8

mortgage to someone else); Foregger v. Residential Credit Solutions, Inc., No. 12-cv-11914-FDS, 2013 WL 3208596, at *10 (D. Mass. June 21, 2013) (unrecorded assignment that was "outside the chain of legal title" was insufficient to break chain of title where plaintiff had "not set forth any evidence that the [assignment] [was] valid"). Accordingly, Plaintiff fails to state a plausible claim for relief based on a void assignment.[2]

C. **Notice to Cure**

Plaintiff next contends that the 150-day cure notice was defective, because the amount required to cure the default included missed payments from over six years ago, relying on Massachusetts General Laws Chapter 106, Section 3−118, which states that "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note, or if a due date is accelerated, within six years after the accelerated due date."

The cure notice was provided pursuant to Massachusetts General Laws Chapter 244, Section 35A, which "gives a mortgagor of real property in the Commonwealth a right to cure a payment default before foreclosure proceedings may be commenced." Haskins v. Deutsche Bank

---

[2] Plaintiff does not allege that Defendant does not currently possess the note (nor does he press any related argument in his opposition to the motion to dismiss) and acknowledges in the Complaint that Defendant sent him a copy of the note with the notice of the foreclosure sale. Compl. ¶¶ 5−6. Rather, Plaintiff alleges that Defendant failed to provide a "chain of evidence" of the "intervening owners of the note." Id. ¶ 8. "Nothing in Massachusetts law requires a foreclosing mortgagee to demonstrate that prior holders of record legal interest in the mortgage also held the note at the time each assigned its interest in the mortgage to the next holder in the chain." McAllister v. Countrywide Home Loans, Inc., No. 16-cv-10911-GAO, 2017 WL 1173925, at *9 (D. Mass. Mar. 29, 2017) (quoting Shea v. Federal Nat'l Mortg. Ass'n, 31 N.E.3d 1122, 1124 (Mass. App. Ct. 2015)). Where, as here, Plaintiff does not allege that defendant did not possess the note but claims that defendant had not "adduced direct evidence that it received a valid assignment of [the note]," Plaintiff's argument fails in light of Defendant's submission of a copy of the note endorsed in blank. Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 356 (1st Cir. 2013) ("Where the note and mortgage are unified at the time of foreclosure, [the court's] inquiry may come to an end.").

9

Nat. Trust Co., 19 N.E.3d 455, 458 (Mass. App. Ct. 2014). Section 35A states that "the mortgagee, or anyone holding thereunder, shall not accelerate maturity of the unpaid balance of such mortgage obligation or otherwise enforce the mortgage because of a default consisting of the mortgagor's failure to make any such payment . . . until at least 90 days after the date a written notice is given by the mortgagee to the mortgagor." M.G.L. c. 244, § 35A(b). The 90-day cure notice must inform the mortgagor of, among other things, "the nature of the default claimed on such mortgage of residential real property and of the mortgagor's right to cure the default by paying the sum of money required to cure the default." Id. at § 35A(c). Here, Plaintiff received a Section 35A cure notice dated January 8, 2016, 150 days prior to Defendant's anticipated enforcement of the mortgage.[3] He claims only that the notice was defective because in stating the amount required to cure the default, Defendant included missed payments from before January 8, 2010, which were purportedly unenforceable under Section 3−118's six-year statute of limitations.

Plaintiff provides no statutory basis or authority in the case law for applying Section 3−118 to the notice to cure. In sending the notice to cure, Defendant did not take "an action to enforce the obligation of a party to pay a note payable," M.G.L. c. 106, § 3−118, but rather complied with a statutory prerequisite to foreclose on the mortgage. Section 3−118 "does not apply to foreclosures." Duplessis v. Wells Fargo Bank, N.A., 91 Mass. App. Ct. 1125, 2017 WL 2332709, at *2 (Mass. App. Ct. May 30, 2017). Although Section 3−118 might prevent a lender from collecting on an unpaid note that is more than six years overdue, "[t]hat does not mean . . . that [the mortgagee] cannot foreclose." Id. at 3; see Junior v. Wells Fargo Bank, N.A., No. 17−10460, 2017 WL 1199768, at *2 (D. Mass. Mar. 30, 2017) ("[W]hile the mortgagee may not

---

[3] The prior version of Section 35A, which was effective until January 1, 2016, provided a 150-day right to cure.

be able to bring an action for a deficiency under the note, it may still foreclose the mortgage.").

Plaintiff concedes that no payments have been made on the note since September 1, 2008, which is the earliest missed payment identified on the cure notice. Ultimately, Plaintiff presents no basis for the Court to apply Section 3−118 to the cure notice that creditors are statutorily required to provide prior to foreclosure. Cf. Anctil v. Specialized Loan Servicing, LLC, 2016 WL 70451, at *1 (D. Mass. Jan. 6, 2016) ("[Plaintiff's] attempt to recast the § 35A letter as an effort by [defendant] to collect the underlying debt from him is unavailing . . . . As he notes elsewhere in the Complaint, as a mortgagor, [defendant] was required by law to provide him a notice to his right to cure the default.").[4] Accordingly, Plaintiff fails to provide any basis for enjoining the foreclosure based on the 150-day cure notice.

### III. MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff included a request for a preliminary injunction in his Complaint. [ECF No. 15 at 13]. To evaluate whether Plaintiff is entitled to a preliminary injunction, the Court must analyze four factors: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, *i.e.*, the hardship

---

[4] Moreover, even if Section 3−118 applied to the determination of the correct amount to be listed in a cure notice, Plaintiff has not shown that six years have passed from the "due date or dates stated in the note" or the "accelerated due date." Plaintiff provides no authority for making the "due date" under Section 3−118 the date of any missed monthly payment in the absence of acceleration. Here, the date of maturity on the note was July 1, 2034, and the note was not accelerated until after the 150-day cure notice was sent. Cf. Duplessis, 2017 WL 2332709, at *2 & n.7 (reviewing Section 3−118 and noting plaintiff did not challenge lower court's determination that maturity date on the note was December 1, 2034 but attempted to argue on appeal that the note was accelerated more than six years ago). He relies only on Clark v. Trumble, 692 N.E. 2d 74, 79 n.9 (Mass. App. Ct. 1998), a case in which Section 3−118 was inapplicable, as it had only been enacted shortly before the issuance of the decision. See Premier Capital, LLC v. KMZ Inc., 984 N.E. 2d 286, 289−90 (Mass. 2013) ("Before the 1998 enactment of G.L. c. 106, § 3–118, there was no uniform statute of limitations governing actions to enforce negotiable instruments. Instead, parties were obliged to consider general statutes of limitations located in various statutory provisions outside the UCC to determine the applicable time frame within which to file suit.").

to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." Esso Standard Oil Co. (Puerto Rico) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006) (internal quotation marks omitted). "The party seeking the preliminary injunction bears the burden of establishing that these four factors weigh in its favor." Id.

Although the other factors for injunctive relief favor Plaintiff, they do not overcome the unlikelihood of success. Plaintiff may be subject to irreparable harm if his home is foreclosed upon, and the balance of hardships weighs in his favor because he will be subject to greater hardship upon the denial of a preliminary injunction than Defendant would be upon its allowance. Ultimately, though, "[t]he sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he [or she] is likely to succeed in his [or her] quest, the remaining factors become matters of idle curiosity." Id. (internal quotation marks and citation omitted). Here, Plaintiff has not shown that he is likely to succeed on the merits of his claims, for the reasons discussed supra. Therefore, he is not entitled to a preliminary injunction.

**IV.  CONCLUSION**

For the foregoing reasons, the motion to dismiss [ECF No. 13] is GRANTED and the request for a preliminary injunction is DENIED. Accordingly, the TRO will not be further extended and the case shall be dismissed.

**SO ORDERED.**

April 24, 2018                                        /s/ Allison D. Burroughs
                                                      ALLISON D. BURROUGHS
                                                      U.S. DISTRICT JUDGE